IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-88-FL

| | | |
|---|---|---|
| MICHELLE MCRAE, Administrator for the Estate of Kevin Dijon Grissett, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| JACOB RANSONE PFEFFER, individually, | ) ) ) ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion for new trial. (DE 168). The motion has been fully briefed, and in this posture, the issues raised are ripe for ruling. For the following reasons, the court denies plaintiff's motion.

## BACKGROUND

Jury trial in this matter commenced February 20, 2019, on claims brought by plaintiff, as representative for the estate of her deceased son, Kevin Dijon Grissett ("Grissett"), alleging excessive force used by defendant Jacob Pfeffer, law enforcement officer with the town of Hope Mills police department. All claims arise out of a February 1, 2014, traffic stop and ensuing pursuit which concluded when defendant shot Grissett multiple times. Grissett died from complications of the shooting.

A special interrogatory was submitted to the jury on February 28, 2019, in which the jury determined Grissett was not complying with defendant's instructions at the moment he was first shot. Based on this finding, the court held as a matter of law that defendant was entitled to qualified

immunity under federal law and public officer immunity under North Carolina law, thus rendering judgment in favor of defendant. Plaintiff filed the instant motion on March 15, 2019, seeking new trial.

For case background purposes, the court incorporates herein by reference the statement of the case and statement of facts from its March 30, 2018, order on defendant and formerly-named defendants' motions for summary judgment. (See Sum. J. Order (DE 79) at 1-8). The court describes the evidence introduced at trial in more detail in the analysis herein.

## COURT'S DISCUSSION

A. Standard of Review

A new trial may be granted if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). On a motion for new trial, the court is "permitted to weigh the evidence and consider the credibility of witnesses." Id. "The decision to grant or deny a new trial is within the sound discretion of the district court." Id. "Unless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial," if the error "do[es] not affect [a] party's substantial rights." Fed. R. Civ. P. 61; see Duty v. E. Coast Tender Serv., Inc., 660 F.2d 933, 942 (4th Cir. 1981).

B. Analysis

1. Use of Special Interrogatory

The relevant, undisputed facts presented at trial are as follows: On the day in question, defendant attempted to pull over a vehicle driven by Grissett and a roughly 10-minute car chase

2

ensued, ending with Grissett's vehicle striking two police officer vehicles, including defendant's. Defendant then exited his vehicle, moved towards Grissett's vehicle, and directed Grissett to put his hands up, to which Grissett initially complied.

The key issue disputed at trial was under what circumstances, when defendant arrived at Grissett's vehicle, did defendant open fire on Grissett, with plaintiff contending Grissett was immobile, with his hands up as directed, and defendant contending Grissett was lunging into the floorboard for what defendant perceived to be a weapon.

The following was submitted to the jury, following trial, in the form of special interrogatory:

Plaintiff contends that Kevin Grissett was complying with defendant's instructions at the moment he was first shot.

Was Kevin Grissett complying with defendant's instructions at the moment he was first shot?

YES \_\_\_\_\_      NO \_\_\_\_\_

(DE 165).[1]

The jury marked "NO" in response and the court found as a matter of law based on this response that defendant was entitled to qualified immunity and public officer's immunity, rendering verdict in defendant's favor. See,e.g., Anderson v. Russell, 247 F.3d 125, 128, 132 (4th Cir. 2001) (holding that officers were entitled to qualified immunity for shooting a man suspected of carrying a gun who initially complied with commands, but later lowered his hands and reached into his back left pocket toward a bulge under his clothing); Slattery v. Rizzo, 939 F.2d 213, 214–17 (4th Cir. 1991) (holding that the shooting of an individual, suspected of narcotics trafficking, was objectively

---

[1] Plaintiff argues that the "question for the jury should have been tailored to all of the circumstances at the time force was used . . . and not what transpired during the pursuit and/or the subsequent collision," (DE 171 at 7 (citation omitted)), but does not provide how the question submitted was not so tailored.

reasonable when the suspect ignored commands to raise his hands and turned in the officers' direction with his hand partially closed around an object); Smith v. State, 289 N.C. 303, 331 (1976) ("As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability.").

Plaintiff does not argue that based on the jury's response to the special interrogatory, defendant was not entitled to immunity. Additionally, plaintiff admits that "plaintiff did not object to the formation" of the special interrogatory when submitted to the jury. (DE 171 at 8). However, plaintiff now argues that "both the Court and the Plaintiff operated under the misapplication of the law as presented by Defendant," and that "the instructions given by Defendant Pfeffer is a totally separate and legal distinct question from whether Defendant Pfeffer used excessive deadly force," which should have been submitted to the jury. (Id. at 6-8).

In support, plaintiff cites United States v. Burton, 228 F.3d 524 (4th Cir. 2000); however, Burton is of limited relevance in the present context, where the United States Court of Appeals for the Fourth Circuit held as follows:

> In asserting that officers are entitled, during a police-citizen encounter, to conduct a limited search for weapons when a reasonable officer in similar circumstances would believe that his safety was in danger, the government misconstrues the relevant principles of Fourth Amendment jurisprudence. In the language of the Supreme Court, Burton had a "right to go about his business or to stay put and remain silent in the face of police questioning," . . . and an individual's "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for detention or seizure,". . . . . There is no evidence in the record that Burton made any moves as Officer Burke approached. He simply continued to stand by the telephone booth with his hand in his pocket. He did refuse to talk with the policemen and to remove his hand from his pocket, but something more is required to establish reasonable suspicion that criminal activity is afoot. And in the absence of reasonable suspicion, an officer may not frisk a citizen merely because he feels uneasy about his safety. We therefore conclude that Officer Burke's reaching inside Burton's coat was an unlawful

search, and the handgun discovered as a result of this search must therefore be suppressed.

Burton, 228 F.3d at 528–29 (citations omitted).

Here, the issue was not one of whether an officer may frisk a citizen, but whether the officer, defendant Pfeffer, was allowed to "use deadly force when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996) (citing Tennessee v. Garner, 471 U.S. 1 (1985)).

Plaintiff is correct that the issue of immunity is a separate and legally distinct question from whether defendant engaged in excessive force. See Mitchell v. Forsyth, 472 U.S. 511, 527–28 (1985) ("a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated"). However, it does not follow because the issues are distinct, both should have been submitted to the jury. See DiMeglio v. Haines, 45 F.3d 790, 797 (4th Cir.1995) (holding that court should assess, before anything else, the qualified immunity issue).

As held by the Fourth Circuit and directly applicable to the present situation, "juries are ill-suited to make the determinations of law required by the qualified immunity analysis" and "[t]herefore, to the extent that a dispute of material fact precludes a conclusive ruling on qualified immunity at the summary judgment stage, the district court should submit factual questions to the jury and reserve for itself the legal question of whether the defendant is entitled to qualified immunity on the facts found by the jury." Willingham v. Crooke, 412 F.3d 553, 560 (4th Cir. 2005).[2] Here, a dispute of material fact precluded a conclusive ruling on qualified immunity at the

---

[2] This position is consistent with North Carolina law. See Allmond v. Goodnight, 230 N.C. App. 413, 426–27 (2013) ("In light of that fact and the fact that the validity of Defendant's public official immunity claims hinges upon the resolution of a disputed factual issue, a jury, rather than a trial court ruling on a summary judgment motion, must decide . . . . In the event that the jury determines that Defendant was pursuing a speeding motorist at the time that he entered the intersection in which the collision occurred, he will be immune from liability."); see also Bailey v.

summary judgement stage. (See Sum. J. Order (DE 79) at 12 ("Although the evidence submitted to the court applicable to the moments before defendant Pfeffer opened fire is limited, that evidence, when viewed in light most favorable to plaintiff, permits a reasonable inference that Grissett was not lunging for the floorboard for a weapon but instead was immobile with his hands raised above his head, in response to defendant Pfeffer's commands, and therefore a reasonable officer would not believe that Grissett posed a threat of serious physical harm to the officer or others.")). Thus this factual question was submitted to the jury with the court, thereafter, holding defendant entitled to immunity based on that finding.

The Eleventh Circuit's discussion in <u>Simmons v. Bradshaw</u>, 879 F.3d 1157 (11th Cir. 2018) is instructive. Similar to this court's summary judgement order in the present case, in <u>Simmons</u> "[i]n its order disposing of the parties' motions for summary judgment, the district court expressly reserved the qualified immunity question for later determination." <u>Id.</u> at 1165. However, unlike the present case, the trial court did not "submit[] the contested factual issues—i.e., the historical facts—to the jury at trial" and instead gave jury instruction regarding qualified immunity. <u>Id.</u>

The Eleventh Circuit held these jury instructions contained an incorrect statement of the law "but moreover . . . [the instructions] effectively delegated resolution of the issue of qualified immunity to the jury–presumably as to both facts and law–and thus the district court never decided whether Deputy Lin was entitled to his claimed defense of qualified immunity." <u>Id.</u> at 1166. The Eleventh Circuit held "the excessive force inquiry was not sufficiently divorced from the qualified immunity inquiry in that the instruction improperly conflated the two inquiries and presented the

---

<u>Kennedy</u>, 349 F.3d 731, 742 (4th Cir. 2003) ("The police officers concede, and we agree, that public officers' immunity, at the least, is unavailable to officers who violate clearly established rights because an officer acts with malice when he 'does that which a man of reasonable intelligence would know to be contrary to his duty.'").

6

jury with both together" and that "[t]he jury was thus essentially forced to find either that Deputy Lin used excessive force and therefore was not entitled to qualified immunity, or that Deputy Lin did not use excessive force at all." Id.

The Eleventh Circuit provided direction as to what the trial court should have done:

> Had the jury been afforded the opportunity to make specific factual findings relevant to the qualified immunity inquiry—including, for example, whether Stephens had committed a traffic infraction on his bicycle; whether Stephens dismounted from his bicycle and complied with Deputy Lin's commands following the stop; and whether Stephens possessed any weapons, threatened Deputy Lin, or attempted to flee—the district court could (and should) have then determined, as a matter of law, whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions.

Id. at 1167 n.7 (citations omitted).

Here, the jury was afforded the opportunity to make a specific factual finding relevant to the qualified immunity and public officer's immunity inquiry, allowing the court to grant said immunities to defendant, precluding the need for further jury findings.[3]

2. Prejudicial References

Plaintiff additionally argues that the jury verdict will result in a miscarriage of justice where plaintiff had successfully moved in limine to exclude reference made to Grissett's criminal past and where defendant "repeatedly made highly prejudicial references about Mr. Grissett during the trial," including his "dangerous propensity" and testimony indicating that Grissett may have been armed on the night in question. (DE 171 at 1).

---

[3] Plaintiff argues that in order for the jury to find that Grissett was not compliant at the time of the first shot, "the jury had to disregard the overwhelming evidence that clearly showed that Mr. Grissett was seated in the passenger seat with his hands up at the time of the first shot." (DE 171 at 6). Upon review of the record, and as discussed below, the court rejects this argument holding that the jury's verdict did not go against the clear weight of the evidence.

7

Although the court did grant plaintiff's motion in limine, plaintiff fails to address what occurred at trial. On the first day of plaintiff's case-in-chief, February 21, 2019, plaintiff put into evidence Grissett's dangerous propensity and evidence indicating Grissett may have been armed on the night in question by entering into evidence plaintiff's exhibits 25 and 26, exhibits plaintiff had the jury read. Therefore, plaintiff opened the door to these references being made by defendant. When this was pointed out by defense counsel to the court, plaintiff's counsel chose not to be heard on this issue. Additionally, plaintiff does not point to a specific reference made by defendant at trial, only arguing generally that prejudicial references were made.

The court finds no miscarriage of justice based on this argument.[4]

3.  Weight of the Evidence

Plaintiff argues that the jury verdict is against the clear weight of the evidence where "[t]he testimony of all the disinterested witnesses at trial, established that Defendant Pfeffer fired the first shot at Mr. Grissett as he sat in the driver's seat" and where defendant's "version is clearly contradicted not only by the physical evidence but also by his own inconsistent statements." (DE 169 at 2 and 9).

The jury verdict rendered was not against the clear weight of the evidence. Plaintiff called defendant in plaintiff's case-in-chief, and defendant repeatedly testified, in part based on reports previously provided by defendant to others regarding the incident in question and based on defendant's deposition, as follows:

---

[4] The court further rejects plaintiff's argument that the length of time of jury deliberation was somehow related to "Defendant's introduction of prejudicial evidence," (DE 171 at 9), where plaintiff offers no facts, argument, or case law in support of such an assertion.

> Q. Did you not report to Captain Servie that you then reported that Grissett gave you a look of non-compliance and then went down and lunged toward the floorboard, the front passenger floorboard, is that what you reported to Captain Servie?
> A. Yes . . . .
> Q. And then he looked down to the right according to you to the front passenger floorboard, that's what you reported to Captain Servie, am I correct?
> A. Yes.
> Q. Then you indicated he then looked back at you with a look of defiance?
> A. Yes.
> Q. Am I correct? And then you stated he lunged toward the floorboard, am I correct?
> A. Yes . . . .
> Q. Did you not say that Mr. Grissett raised his hands and he glanced away from me and to the floorboard, then the passenger floorboard, then he dropped his hands and lunge to do the floorboard?
> A. That's correct . . . .
> Q. In that you state and you can follow, he brought his hands up, he looked at me, he looked back at the floorboard, and what I describe as a target glance, he then looked back at me to see where I was at, dropped his hands and lunge to do the floorboard all while I was moving towards the vehicle. Was that not your testimony in December of 2016?
> A. Yes, sir . . . .
> Q. You were asked questions about whether your testimony was -- whether your statements had been inconsistent from back then as opposed to now. Have you ever said anything other than the fact that you discharged your weapon when he started lunging toward that floorboard?
> A. I have not.

(Tr. February 26, 2019, at 23:12-14; 32:22-33:7, 38:13-17, 40:8-15, 56:3-9).[5]

---

[5] Plaintiff argues at length as to alleged inconsistencies in defendant's testimony, arguing both that "[a] reasonable jury should have concluded from [defendant's deposition testimony] alone that Mr. Grissett was sitting in the driver's seat which Defendant Pfeffer unequivocally admitted was where he was aiming" and "[a] reasonable jury should have inferred that Detective Pfeffer was not being truthful when he recounted the events surrounding the shooting when it was shown that he repeatedly misrepresented the truth about so many other things." (DE 171 at 4, 12). These arguments are not persuasive. Based on the evidence presented at trial, a reasonable jury could conclude that defendant's version of events occurred. It was incumbent upon the jury to make a credibility determination as to defendant as well as determine what weight if any to afford defendant's testimony. This the jury did and the verdict rendered, as concluded below, does not go against the clear weight of the evidence.

The only testimony offered at trial to contradict defendant's above assertions was offered by plaintiff's expert Steven Howard ("Howard"),[6] who testified based on his recreation of the scene in question, Grissett was not reaching for a gun, but "at the time the first shot was fired," Grissett was "sitting up, he would have been hunched over in the driver's seat." (Id. at 94:23-95:5). Howard's testimony indicated that he formed this opinion primarily based on "the trajectory" of the bullet, which he described as a "straight line," as well as "the torn seat and the limited penetration." (Id. at 95:6-8; see also id. at 94:11-13 ("As I discussed, the angles are correct in terms of the window was hit; the headrest was hit; the deceased was hit, and it's basically a straight line"); id. at 141:2-142:5 (testifying the bullet first went through the tempered glass window of the vehicle, then the edge of the headrest of the vehicle, before entering Grissett)).

However, on cross-examination, when asked about the trajectory from point A, the gun, to point B, the vehicle window, to point C, the headrest, to point D, Grissett's body, Howard testified as follows:

> A. So my straight line is perfect back from where it started to where it entered to where it hit the headrest, but I have no idea where it hit the glass window . . . .
> Q. So you know where it ended up but you don't know the angle that it came into that headrest from because we've already established that you don't know where it hit the window and now you just established for me that you don't know the flight path going through the corner of the headrest?
> A. I know it hit the headrest and I know it hit the deceased and the deceased couldn't have been anywhere else.

(Id. at 150:8-11, 162:11-19). Howard further testified bullets will deflect, deform, and decelerate when they strike a hard surface, such as a tempered glass window, but that such was not accounted for in his configuration of the trajectory of the bullet:

---

[6] As recognized by plaintiff, witness Craig Nelson, M.D., limited his opinion solely to the internal directions the bullets traveled through the body and did not opine on the position of Grissett at the moment the first shot was fired. (See DE 171 at 10 n.3).

10

> Q. Well, since you mentioned deflection, can you show me where in Plaintiff's Exhibit 28 A you've illustrated any deflection at all?
> A. Well, as I said, this shows the general flight path only. It doesn't show the exact flight path. Now, the exact deflection, we don't know . . . .

(Id. at 148:14-19).

Although Howard testified he was certain as to Grissett's location at the time defendant opened fire on Grissett, Howard's testimony, as evidenced above, was not conclusive and does not provide the "clear weight of the evidence" which plaintiff argues the jury's verdict goes against. Defendant also testified he was certain as to Grissett's location at the time defendant opened fire, and a reasonable jury could have found defendant's testimony as to what occurred at the moment at issue credible and plaintiff's expert witness's version incredible.[7] Thus, new trial on this basis is not warranted.[8]

## CONCLUSION

Based on the foregoing, plaintiff's motion for new trial (DE 168) is DENIED.

SO ORDERED, this the 9th day of August, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[7] In so concluding, the court disregards plaintiff's argument that defendant made a "clear admission of premeditation," where plaintiff selectively quotes from the evidence in support. (See DE 171 at 11-12; see also Pl's Ex. 25 at 69 ("if – had he complied. When I – when I drew on him, uh, show me your hands, Show me your hands. Had he complied, it would've gone like any other situation. I'd have had him get [] out of the vehicle.")).

[8] Plaintiff makes much of the fact that defendant did not testify during defendant's case and testified only as a witness called by plaintiff. However, plaintiff put into the record copious evidence as to defendant's version of events and had defendant testify at length. Thus, plaintiff's position that "there was virtually no evidence introduced by Defendant Pfeffer to rebut Plaintiff's evidence," (DE 171 at 11), is without basis. Likewise, plaintiff's argument that "the record is totally devoid of any meaningful expert evidence offered by Defendant Pfeffer" to contradict plaintiff's expert, (id.), is unpersuasive where the jury, as instructed, could "decide that the opinion of an expert witness is not based upon sufficient education or experience," "conclude that the reasons given in support of the opinion are not sound," or "conclude that the opinion is outweighed by other evidence," and in so doing, "disregard the opinion in part or in its entirety." (Jury Instr. (DE 164) at 13).